IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JPMORGAN CHASE BANK, N.A.,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 19-cv-3852 |
| | : | |
| **DANDO VIDA, LLC, et al.,** | : | |
| Defendants. | : | |

**MEMORANDUM**

**SITARSKI, M.J.**                                                                                                       **February 15, 2023**

Presently pending before the Court are the Motion for Summary Judgment filed by Plaintiff JPMorgan Chase Bank, N.A. ("Plaintiff") (Pl.'s Mot. for Summ. J., ECF No. 40), the response in opposition to the motion filed by Defendants Dando Vida, LLC, Dando Vida – Malawis 005, LLC, Dando Vida – Malawis 007, LLC, CSJ Enterprises, L.P., and Franco V, L.L.C. ("Dando Vida Defendants") (Dando Vida Defs.' Resp., ECF No. 41), the opposition filed by Defendants Cheryl A. Franco and Frank A. Franco ("Franco Defendants") (Franco Defs.' Resp., ECF No. 42), and Plaintiff's reply brief in further support of its motion (Pl.'s Reply, ECF No. 43). For the reasons that follow, Defendant's Motion for Summary Judgment shall be **GRANTED**.[1]

---

[1] Plaintiff has also filed a mortgage foreclosure action against the Franco Defendants (Case No. 19-cv-3851). It moves for summary judgment on this foreclosure claim (*id.*, Pl.'s Mot. for Summ. J., ECF No. 28), and the Court disposes of its motion in a separate memorandum and order.

I.   **FACTS AND PROCEDURAL BACKGROUND**[2]

This action arises out of loan agreements, line of credit notes, and repayment guaranties ("Loan Documents") executed by Defendants concerning two loans ("Loan 1" and "Loan 2") made by Plaintiff.

Pursuant to the terms of a line of credit note ("Contract 1 Note"), Plaintiff made Loan 1 on or about December 22, 2017 to Defendants Dando Vida, LLC ("Dando Vida"), Dando Vida – Malawis 005, LLC ("Dando Vida 005"), and Dando Vida – Malawis 007, LLC ("Dando Vida 007") (collectively, "Borrowers") in the amount of $1,114,000.00. (Pl.'s Mot. for Summ. J., ECF No. 40-2, Peterson Aff. at ¶ 3, Ex. A). Dando Vida, Dando Vida 005, and Dando Vida 007 also entered into a construction loan agreement ("Contract 1 Loan Agreement") with Plaintiff in connection with Loan 1. (*Id.*).

On or about November 18, 2016, Dando Vida, Dando Vida 007, and Plaintiff entered into a business loan agreement ("Contract 2 Loan Agreement") for Loan 2. (*Id.* at ¶ 6, Ex. C). Dando Vida and Dando Vida 007 executed a promissory note in the amount of $1,023,000.00. (*Id.*). The Borrowers subsequently executed another line of credit note ("Contract 2 Note") on or about August 14, 2018 in the amount of $972,227.88. (*Id.* at ¶ 7, Ex. D).

Each line of credit note specifies that the Borrowers shall pay the outstanding balance and interest on the unpaid principal balance computed on the basis of the "Adjusted LIBOR Rate." (*Id.* Ex. A, Contract Note at 1, Ex. D at 1). The "'LIBOR Rate' means the London interbank offered rate as administered by ICE Benchmark Administration . . . for a period of time equal to each Interest Period." (*Id.*). The "Adjusted LIBOR Rate" is defined as "the Applicable Margin

---

[2] As required at this stage of the proceeding, the Court views the evidence in the light most favorable to Defendants as the non-moving parties. *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

plus the LIBOR Rate." (*Id.*). The "Applicable Margin" under Contract 1 Note is 4.00% per annum. (*Id.* Ex. A, Contract Note at 1). Contract 2 Note's "Applicable Margin" is 4.669% per annum. (*Id.* Ex. D at 1). Contract 1 Note matured on December 22, 2018, while Contract 2 Note matured on October 14, 2018. (*Id.* Ex. A, Contract 1 Note at 1, Ex. D at 1).

According to Defendants, Plaintiff was implicated in "the LIBOR Scandal" before the loans at issue in this case were made. (*See, e.g.*, Dando Vida Defs.' Resp., ECF No. 41-1, Ex. A at ¶ 9). In 2012, it was discovered that several major financial institutions had colluded to fix the LIBOR rate for their own benefit. (*Id.* at ¶ 9 n.2). "Fines, lawsuits and regulatory actions resulted from this revelation and, beginning December 31, 2021, LIBOR is no longer permitted to be used to issue new loans in the United States. Instead, it will be phased out and replaced with the Secured Overnight Financing Rate (SOFA) by 2023." (*Id.* at ¶ 9 n.2) (citing James McBride, *Understanding the Libor Scandal*, Council on Foreign Relations (Oct. 12, 2016, 8:00 AM), https://www.cfr.org/backgrounder/understanding-the-libor-scandal). As part of a series of reforms, ICE Benchmark Administration replaced the British Bankers' Association ("BBA") as the LIBOR administrator in February 2014. (*See, e.g.*, Pl.'s Reply, ECF No. 43, at 5 n.4) (quoting *United States v. Allen*, 864 F.3d 63, 70 n.12 (2d Cir. 2017)).

On or about November 18, 2016, the Franco Defendants, CSJ Enterprises, L.P. ("CSJ Enterprises"), and Franco V, L.L.C. ("Franco V") executed separate guaranties to pay Plaintiff the "Indebtedness" of Dando Vida and Dando Vida 007. (Pl.'s Mot. for Summ. J., ECF No. 40-2, Peterson Aff. at ¶¶ 11-14, Ex. H-K). As security for the loans, on November 18, 2016, the Franco Defendants also executed a mortgage covering real property located at 60 Golfview Drive, Warminster, Bucks County, Pennsylvania, 18974. (*Id.* at ¶ 10, Ex. G).

Plaintiff submitted records concerning its loans together with an affidavit from Chris

Peterson, Plaintiff's Special Credit Lead with a corporate title of Vice President who is responsible for managing both loans. (*Id.* at ¶¶ 1-2). According to the records and Peterson's affidavit, the Borrowers have failed to make their required payments under the terms of Contract 1 Note and Contract 2 Note, and they are in default. (*Id.* at ¶¶ 4, 8) (citing Ex. B, Ex. E). Peterson also averred that the Franco Defendants, CSJ, and Franco V have failed to cure the Borrowers' defaults and accordingly have defaulted on their guaranties. (*Id.* at ¶¶ 11-14).

On August 26, 2019, Plaintiff filed its Complaint against the Dando Vida and Franco Defendants, alleging a breach of contract claim against Defendants and seeking the entry of a monetary judgment. (Compl., ECF No. 1, at 5-7). Following service of process, a default was entered against the Dando Vida Defendants on October 16, 2019. (Docket Sheet at 3). On October 24, 2019, the default was stricken, and, on November 8, 2019, the Dando Vida and Franco Defendants filed their Answers to the Complaint. (Stipulation & Order, ECF No. 12; Dando Vida Defs.' Answer, ECF No. 13; Franco Defs.' Answer, ECF No. 14).

After delays by the parties – especially Plaintiff – in returning the forms consenting to my jurisdiction, on April 20, 2021, Judge Jones ordered Plaintiff to show cause by May 4, 2021 as to why this matter (as well as its mortgage foreclosure proceeding) should not be dismissed for want of prosecution. (*Id.* at 1). Noting that Plaintiff apparently has abandoned this litigation, he indicated that, if Plaintiff intended to pursue this case, Plaintiff and counsel for the Dando Vida Defendants should complete the consent form and return it to the Court "forthwith." (*Id.* at 1 n.1). By April 29, 2021, all parties had consented to my jurisdiction, and Judge Jones referred the cases to me. (Consent & Order, ECF No. 14).

Additional pretrial conferences were held on May 7, 2021 and April 5, 2022 (and another Rule 26(f) report was filed on May 5, 2021). (Minute Entry 25, Minute Entry No. 28, Minute

Entry No. 38).  After the close of discovery on June 6, 2022 (Scheduling Order, ECF No. 37), Plaintiff filed its Motion for Summary Judgment on July 13, 2022.  (Pl.'s Mot. for Summ. J., ECF No. 40).  Plaintiff submitted Peterson's affidavit in support of its motion, which provided calculations of the outstanding balances, interest, and late fees and costs owed as of June 13, 2022, together with copies of the "transaction histories" for Contract 1 Note and Contract 2 Note and a "screen print" from the system it uses to service Contract 2 Note.  (Pl.'s Mot. for Summ. J., ECF No. 40-2, Peterson Aff. at ¶¶ 4-5, 8-9, 15, Ex. B, Ex. E, Ex. F).  Peterson also stated that, as to Contract 2 Note, "[i]nterest will continue to accrue until the date of judgment at the variable interest rate of 4.669% plus the LIBOR Rate." (*Id.* at ¶ 9).  According to Peterson, Plaintiff has incurred attorneys' fees and legal expenses to enforce its rights.  (*Id.* at ¶ 16).

Subsequently, Plaintiff was provided with a copy of an ATLA settlement statement concerning the proposed sale by Frank Franco of the real property located at 96 Reliance Circle, Hilltownship, Bucks County, Pennsylvania.  (Dando Vida Defs.' Resp., ECF No. 41-1, Ex. B at 1).  The Reliance Circle property was collateral for the Loans pursuant to a mortgage.  (*Id.*).  In an August 25, 2022 letter from its counsel to the Franco Defendants' attorney, Plaintiff consented to the sale of the Reliance Circle property, released its lien on the property subject to the receipt of the sale proceeds, and retained its lien on the remaining collateral.  (*Id.* at 1-2).

The Dando Vida Defendants filed their opposition to Plaintiff's motion on October 6, 2022, and the Franco Defendants' response was filed the next day.  (Dando Vida Defs.' Resp., ECF No. 41; Franco Defs.' Resp., ECF No. 42).  In opposing the Motion for Summary Judgment, Defendants rely on an affidavit executed by Cheryl Franco.  (*See* Dando Vida Defs.' Resp., ECF No. 41-1, Ex. A).  Plaintiff filed its reply brief on November 30, 2022.  (Pl.'s Reply, ECF No. 43).  With its reply, it submitted a supplemental affidavit from Peterson.  Relying on an

5

updated "transaction history" and a "screen print" for Contract 2 Note, Peterson acknowledged that Plaintiff had received a partial payment of $225,787.22 in August 2022 and that this payment was applied to the Contract 2 Note principal (Pl.'s Reply, ECF No. 43-1, Peterson Suppl. Aff. at ¶¶ 6-7, Ex. C, Ex. D).  He further explained that Plaintiff "continuously mailed monthly account statements to Dando Vida and Dando Vida 007 that reflected, among other things, transactions, interest, and payments" for the two notes and, as examples, he attached a copy of the initial monthly account statements for each note.  (*Id.* at ¶¶ 5, 8) (citing Ex. B, Ex. E).  According to Peterson's supplemental affidavit, as of November 23, 2022, the current amount owed on Contract 1 Note is composed of the principal balance of $1,064,329.59, accrued interest of $35,689.07, and late fees and costs of $250.00, for a total of $1,100,268.66.  (*Id.* at ¶ 4) (citing Ex. A).  The current amount owed as of November 23, 2022 on Contract 2 Note consists of the principal balance of $746,440.66, accrued interest of $247,165.52, plus late fees and costs of $250.00, totaling $993,856.18.  (*Id.* at ¶ 7) (citing Ex. C, Ex. D).

## II.     LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" if there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party. *Id.*  It is not the Court's role to weigh the disputed evidence and decide which is more probative or to make credibility determinations.  Rather, the Court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving

party. *See, e.g.*, *Matsushita Elec. Indus. Co.*, 475 U.S. at 587-88; *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the Court must accept as true the evidence adduced by the non-moving party, and "all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 158-59 (1970)).

    The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the moving party carries this initial burden, the non-moving party must come forward with specific facts showing there is a genuine issue for trial. *See, e.g.*, *Anderson*, 477 U.S. at 256-57; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. The non-moving party thereby must present something more than mere allegations, general denials, vague statements, or suspicions in order to defeat a properly supported motion for summary judgment. *See, e.g.*, *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992); *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citing *Dombrowski v. Eastland*, 387 U.S. 82 (1967) (per curiam); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

    "To state a claim for breach of contract under Pennsylvania law, a plaintiff must show: (1) the existence of a contract, including its essential terms; (2) a breach of the duty imposed by the contract; and (3) resultant damages." *U.S. Bank, N.A. v. Gorman*, Civil Action No. 11-612, 2012 WL 2919295, at *1 (W.D. Pa. June 7, 2012) (citing *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225-26 (3d Cir. 2003)), *R. & R. adopted by* 2012 WL 2916721 (W.D. Pa. Jul. 14, 2012). A claim for recovery under a guaranty essentially constitutes a breach of contract action. *Id.* (citing

7

*84 Lumber Co., L.P. v. Bryan Constr. Co.*, No. 2:09-cv-1030, 2011 WL 666209, at *8 (W.D. Pa. Feb. 14, 2011); *Fabral v. B&B Roofing Co.*, 773 F. Supp. 2d 539, 552 (E.D. Pa. 2011)).

### III. DISCUSSION

Plaintiff argues that it is entitled to summary judgment to enforce the unambiguous terms of the Loan Documents executed by the parties. (Pl.'s Mem. of Law, ECF No. 40-1, at 8). Defendants oppose Plaintiff's Motion for Summary Judgment on the grounds that there are genuine disputes of material fact "as to the nature and amount of damages such that Plaintiff fails to meet its burden of proof." (Dando Vida Defs.' Resp. ECF No. 41, at 2; Franco Defs.' Resp., ECF No. 42, at 2). In support of this argument, they claim that Plaintiffs' delay in litigating this case "evidence[s] not only the Plaintiff's lack of interest and prosecution" but also its "failure to meet its burden of proof, at summary judgment, as to the amount of the alleged damages." (Dando Vida Defs.' Resp. ECF No. 41, at 4; Franco Defs.' Resp., ECF No. 42, at 4). Defendants further contend that Plaintiff has failed to provide any details concerning the variable interest rate or the calculation of interest over the life of the loans, has failed to provide "backup" for the attorney's fees allocated to the two loans, and has not accounted for the payment of the "Release Price" made in August 2022. (Dando Vida Defs.' Resp. ECF No. 41, at 2-5; Franco Defs.' Resp., ECF No. 42, at 2-5) (citing Dando Defs.' Resp., ECF No. 29-1, Ex. A at ¶ 7). They also argue that there are issues of fraud arising of the LIBOR Scandal. (Dando Vida Defs.' Resp. ECF No. 41, at 2-5; Franco Defs.' Resp., ECF No. 42, at 2-5). In its reply brief, Plaintiff argues that Defendants' assertions are both factually and legally unsupported and that Defendants have not met their burden of identifying evidence on a material issue that would permit a finder of fact to rule in their favor. (Pl.'s Reply, ECF No. 43, at 1-6). According to Plaintiff, this case "is

nothing more than a straightforward suit to enforce commercial-purpose promissory notes and related guaranties given to secure the repayment of the money borrowed from Plaintiff." (*Id.* at 1). Plaintiff notes that its "totals" do not include its exact legal fees and costs because such amounts are constantly changing over the course of the litigation. (*Id.* at 4).

The Court concludes that Plaintiff has met its burden as the moving party by presenting undisputed evidence establishing the elements of its claim for breach of contract, and that Defendants have failed to present facts raising a genuine dispute of material fact as to this claim.

Initially, the existence of the contracts at issue in this case and their essential terms are undisputed for purposes of the Motion for Summary Judgment. The agreements, notes, and guaranties show on their face that they were executed by the respective parties. (*See* Pl.'s Mot. for Summ. J., ECF No. 40-2, Ex. A, Contract 1 Note at 4-5, Contract 1 Loan Agreement at 25-26, Ex. C, Contract 2 Loan Agreement at 7, Ex. D at 4-5, Ex. H at 3, Ex. I at 3, Ex. J at 3, Ex. K at 3). Contract 1 Note states that Dando Vida, Dando Vida 005, and Dando Vida 007 promise to pay Plaintiff the sum of $1,114,000.00, plus interest on the unpaid principal balance. (*Id.* Ex. A, Contract 1 Note at 1). Contract 2 Note likewise provides that the three Borrowers promise to pay $972,227.88 and interest on the unpaid principal balance. (*Id.* Ex. D at 1). The guaranties state that each guarantor "absolutely and unconditionally" guarantees and promises to pay Plaintiff the "Indebtedness" of Dando Vida and Dando Vida 007. (*Id.* Ex. H at 1, Ex. I at 1, Ex. J at 1, Ex. K at 1).

It is also undisputed for purposes of this summary judgment motion that Defendants have defaulted on their contractual obligations and that those defaults have not been cured by the guarantors. Defendants admit they "were unable to make timely payments on account of Loan 1 and Loan 2." (Dando Vida Defs.' Resp., ECF No. 41, at 2; Franco Defs.' Resp., ECF No. 42, at

nothing more than a straightforward suit to enforce commercial-purpose promissory notes and related guaranties given to secure the repayment of the money borrowed from Plaintiff." (*Id.* at 1). Plaintiff notes that its "totals" do not include its exact legal fees and costs because such amounts are constantly changing over the course of the litigation. (*Id.* at 4).

The Court concludes that Plaintiff has met its burden as the moving party by presenting undisputed evidence establishing the elements of its claim for breach of contract, and that Defendants have failed to present facts raising a genuine dispute of material fact as to this claim.

Initially, the existence of the contracts at issue in this case and their essential terms are undisputed for purposes of the Motion for Summary Judgment. The agreements, notes, and guaranties show on their face that they were executed by the respective parties. (*See* Pl.'s Mot. for Summ. J., ECF No. 40-2, Ex. A, Contract 1 Note at 4-5, Contract 1 Loan Agreement at 25-26, Ex. C, Contract 2 Loan Agreement at 7, Ex. D at 4-5, Ex. H at 3, Ex. I at 3, Ex. J at 3, Ex. K at 3). Contract 1 Note states that Dando Vida, Dando Vida 005, and Dando Vida 007 promise to pay Plaintiff the sum of $1,114,000.00, plus interest on the unpaid principal balance. (*Id.* Ex. A, Contract 1 Note at 1). Contract 2 Note likewise provides that the three Borrowers promise to pay $972,227.88 and interest on the unpaid principal balance. (*Id.* Ex. D at 1). The guaranties state that each guarantor "absolutely and unconditionally" guarantees and promises to pay Plaintiff the "Indebtedness" of Dando Vida and Dando Vida 007. (*Id.* Ex. H at 1, Ex. I at 1, Ex. J at 1, Ex. K at 1).

It is also undisputed for purposes of this summary judgment motion that Defendants have defaulted on their contractual obligations and that those defaults have not been cured by the guarantors. Defendants admit they "were unable to make timely payments on account of Loan 1 and Loan 2." (Dando Vida Defs.' Resp., ECF No. 41, at 2; Franco Defs.' Resp., ECF No. 42, at

2) (citing Dando Vida Defs.' Resp., ECF No. 41-2, Ex A at ¶ 5). Moreover, Peterson (a Vice President responsible for both loans), averred that the Franco Defendants, CSJ Enterprises, and Franco V have failed to fulfill their guaranties. (*Id.* at ¶¶ 11-12). Plaintiff's "transaction histories" for the two loans and "screen prints" from the system Plaintiff uses to service Contract 2 Note also confirm that the Borrowers have failed to pay and that the other Defendants, in turn, have failed to honor their own obligations. (*Id.* at ¶¶ 4-5, 8-9, Ex. B, Ex. E, Ex. F; Pl.'s Reply, ECF No. 43-1, Peterson Suppl. Aff. at ¶¶ 4, 6-7, Ex. A, Ex. C, Ex. D).

Defendants argue that there are genuine disputes of material fact as to the nature and amount of damages. (Dando Vida Defs.' Resp., ECF No. 41, at 2-5; Franco Defs.' Resp., ECF No. 42, at 2-5). However, it is undisputed that Defendants have defaulted under the terms of the respective notes, loan agreements, and guaranties, thereby resulting in damages. In fact, there are only two remaining components of damages that must still be assessed: (1) the amount of interest that has accrued on Contract 2 Note from November 23, 2022 through the date of this Memorandum and accompanying Order[3] and (2) the amount of attorneys' fees and legal expenses incurred.[4]

Contract 1 Note and Contract 2 Note clearly set forth how the interest rates for the loans are to be calculated. (Pl.'s Mot. for Summ. J, ECF No. 40-2, Ex. A, Contract 1 Note at 1, Ex. D at 1). In his most recent calculations, Peterson averred that, as of November 23, 2022, Plaintiff was owed accrued interest on Contract 1 Note in the amount of $35,689.07 and accrued interest

---

[3] Plaintiff's own submissions indicate that interest has not continued to accrue on Contract 1 Note after November 23, 2022, when it totaled $35,689.07. (Compl., ECF No. 1, at ¶ 21; Pl.'s Mot. for Summ. J., ECF No. 40-2, Peterson Aff. at ¶ 5; Pl.'s Reply, ECF No. 43-1, Peterson Suppl. Aff. at ¶ 4). Accordingly, the Court awards interest only in that amount.

[4] The Court directs the parties to submit briefing and any necessary documentation regarding these damages in the accompanying Order.

on Contract 2 Note totaling $247,165.52. (Pl.'s Reply, ECF No. 43-1, Peterson Suppl. Aff. at ¶¶ 4, 7). Peterson has personal knowledge of the transactions at issue (and access to Plaintiff's records concerning the transactions) because he is one of the employees responsible for managing the two loans. (Pl.'s Mot. for Summ. J., ECF No. 40-2, Peterson Aff. ¶¶ 1-2; Pl.'s Reply, ECF No. 43-1, Peterson Suppl. Aff. at ¶¶ 1-2). In turn, Peterson's calculations are based on and supported by Plaintiff's records, including the "transaction histories" showing the transactions, interest, and payments for the loans, examples of the monthly account statements (which provide the interest rate for the billing month and the next month), and "screen prints" for Contract 2 Note. (Pl.'s Mot. for Summ. J., ECF No. 40-2, Peterson Aff. at ¶¶ 4-5, 8-9, Ex. B, Ex. E, Ex. F; Pl.'s Reply, ECF No. 43-1, Peterson Suppl. Aff. at ¶¶ 4-7, Ex. A-E). In contrast, Defendants have failed to point to any competent evidence indicating that Plaintiff's interest calculations are incorrect. Specifically, they have not proffered any additional evidence or identified any deficiencies or errors in the calculations and documentation provided by Plaintiff. Defendants offer unsupported allegations and general denials (Dando Vida Defs.' Answer, ECF No. 13, at ¶¶ 20-23; Franco Defs.' Answer, ECF No. 14, at ¶¶ 20-23; *see also, e.g.*, Dando Vida Defs.' Answer, ECF No. 13, at 5; Franco Defs.' Answer, ECF No. 14, at 5), but these are insufficient to defeat Plaintiff's Motion for Summary Judgment. *See, e.g., Trap Rock Indus.*, 982 F.2d at 890; *Fireman's Ins. Co.*, 676 F.2d at 969.

With respect to their "LIBOR Scandal" theory, Defendants have provided no specific facts indicating that the interest rates applicable to Loan 1 and Loan 2 were manipulated in any way. Instead, they assert that Plaintiff was implicated in the "LIBOR Scandal" in which bankers colluded to fix the LIBOR rate, resulting in fines, lawsuits, and regulatory actions, and point to the eventual replacement of the LIBOR rate with the "Secured Overnight Financing Rate" by

2023. (*See* Dando Vida Defs.' Resp., ECF No. 41, at 3 & n.3; Franco Defs.' Resp., ECF No. 42, at 3 & n.3) (citing Dando Vida Defs.' Resp., ECF No. 41-2, Ex. A at ¶ 9 & n.2; McBride, *supra*). However, they do not attempt to link these broad allegations of misconduct with either Plaintiff itself or the interest rates at issue in this case. In fact, Defendants acknowledge that the alleged malfeasance was discovered in 2012 and that the prohibition on using the LIBOR rate for new loans did not go into effect until December 31, 2021, well after the origination of their loans. (Pl.'s Mot. for Summ. J., ECF No. 40-2, Peterson Aff. at ¶¶ 6-7, 10, 11-12, Ex. A, Contract 1 Note at 1, 4-5, Ex. D at 1, 4-5, Ex. H at 3, Ex. I at 3, Ex. J at 3; Ex. K at 3; Defs.' Resp., ECF No. 41, at 3 n.3; Franco Defs.' Resp., ECF No. 42, at 3 n.3; Dando Vida Defs.' Resp., ECF No. 41-2, Ex. A at ¶ 9 n.2).

The undisputed evidence also shows that Plaintiff had credited Defendants for the partial payment (i.e., the "Release Price") received from the Franco Defendants' real estate sale. Obviously, its initial filings in support of the Motion for Summary Judgment could not have credited Defendants for the payment because its motion was filed on July 13, 2022, Plaintiff did not receive notice of the proposed sale of the Reliance Circle property until August 22, 2022, and it did not consent to the sale itself until August 25, 2022. (Pl.'s Mot. for Summ. J., ECF No. 40; Dando Vida Defs.' Resp., ECF No. 41-1, Ex. B at 1-2). The "transaction history" statement for Contract 2 Note shows that a payment of $255,787.22 was posted and applied to the principal balance on August 29, 2022. (Pl.'s Reply, ECF No. 43-1, Peterson Suppl. Aff. at ¶¶ 6-7, Ex. C at 1, Ex. D (screen print)). Peterson's November 23, 2022 calculation of the unpaid principal balance accounted for the credit. (Pl.'s Mot. for Summ. J, ECF No. 40-2, Peterson Aff. at ¶ 9; Pl.'s Reply, ECF No. 43-1, Peterson Suppl. Aff. at ¶¶ 6-7).

Finally, Defendants' "delay" assertions have no bearing on Plaintiff's Motion for

Summary Judgment and, in any event, are without merit. Defendants do not explain how the alleged delay and ongoing accrual of interest raise a factual dispute sufficient to preclude summary judgment. The Contract 1 Loan Agreement provides that no delay on the part of Plaintiff in the exercise of any right or remedy waives that right or remedy, and the Contract 2 Loan Agreement states that Plaintiff shall not be deemed to waive any rights unless it does so in writing signed by Plaintiff.[5] (Pl.'s Mot. for Summ. J., ECF No. 40-2, Ex. A, Contract 1 Loan Agreement at 21, Ex. C, Contract 2 Loan Agreement at 5). Additionally, it is undisputed that Plaintiff did not pursue many of its matters during the COVID pandemic. (Pl.'s Reply, ECF No. 43, at 3). Further, after initial delays on both sides in providing the forms consenting to my jurisdiction, Plaintiff diligently prosecuted its case while also engaging in multiple settlement conferences. (*See* Minute Entries, ECF Nos. 32, 35). Any delays have no impact on the pending motion for summary judgment.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted.

BY THE COURT:

 /s/ Lynne A. Sitarski  
LYNNE A. SITARSKI  
United States Magistrate Judge

---

[5] The guaranties also provide that Plaintiff shall not be deemed to waive any rights unless such waiver is given in writing signed by Plaintiff and that no delay on its part in exercising any right shall operate as a waiver of such right (or any other right). (Pl.'s Mot. for Summ. J., ECF No. 40-2, Ex. H at 2-3, Ex. I at 2-3, Ex. J at 2-3, Ex. K at 2-3).